**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.*[1] | : | Case  No. 07-10416 (KJC) |
| Debtors | : | |

| | | |
|---|---|---|
| | : | |
| **ANITA B. CARR**, | : | Adv. Pro. No. 13-51058 (KJC) |
| Plaintiff, | : | (Re: D.I. 13) |
| | : | |
| v. | : | |
| | : | |
| **JP MORGAN CHASE BANK, N.A.,** | : | |
| **CHASE HOME FINANCE, LLC *et al.,*** | : | |
| **and DOES 1 - 10,** | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM  DISMISSING**
**COMPLAINT FOR LACK OF JURISDICTION[2]**

BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

On May 21, 2013, Anita B. Carr (the "Plaintiff" or "Ms. Carr") filed the "Verified

Complaint for Violations of Chapter 11 Bankruptcy Stay, Fraud and Fraudulent Conveyance and

Application for Preliminary and Permanent Injunctive Relief and Reservation of Rights" (the

---

[1]The Court approved joint administration of the chapter 11 cases of New Century TRS Holdings, Inc. and fourteen related entities by Order dated April 3, 2007 (Main Case D.I. 52).  New Century Warehouse Corporation, a California corporation, filed a chapter 11 bankruptcy petition on August 3, 2007.  The jointly administered debtors and New Century Warehouse Corporation are referred to collectively herein as the "Debtors."

[2]This Memorandum Order constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. The Court has jurisdiction to determine whether it has subject matter jurisdiction over a matter.  *VeraSun Energy Corp. v. West Plains Co. (In re VeraSun Energy Corp.*, 2013 WL 3336870, *2 (Bankr.D.Del.  June 28, 2013) citing *Chicot Cnty. Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 376-77 (1940) (holding that a federal court has the authority to determine whether it has subject matter jurisdiction over a proceeding).

"Complaint") commencing this adversary proceeding against Defendants JP Morgan Chase

Bank, N.A. ("JPM"), Chase Home Finance, LLC ("CHF") and "any known or unknown dba used

by said Defendants and DOES 1-10" (jointly, the "Defendants").  In her Complaint, Ms. Carr

asks for judgment against the Defendants in the amount of $2,346,000.00, and seeks to enjoin the

Defendants from taking any action to sell, convey or attempt to sell or convey certain real

property located in Dublin, California, or from taking any action to evict Ms. Carr from that real

property.

On July 3, 2013, JPM and CHF filed a motion to dismiss the Complaint (Adv. D.I. 13),

along with a Memorandum of Law in support thereof (Adv. D.I. 14), asserting that this Court

lacks subject matter jurisdiction over the Complaint and that the Complaint fails to state a claim

upon which relief can be granted (the "Motion to Dismiss").  Ms. Carr filed the "Plaintiff's

Opposition and Objection to the Defendants' Motion to Dismiss Verified Complaint and the

Defendants' Request for Judicial Notice" on July 22, 2013 (Adv. D.I. 22).  JPM and CHF filed a

reply on August 1, 2013 (Adv. D.I. 25).  For the reasons set forth below, the Motion to Dismiss

will be granted.

### Bankruptcy Background

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code.  On November 20, 2009, the Court entered an Order confirming the Modified

Second Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (Main Case D.I.

9905).[3]  The Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust

---

[3]On July 15, 2008, this Court entered an Order Confirming the Second Amended Joint Chapter
11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of
April 23, 2008 (the "Confirmation Order") (Main Case D.I. 8596), which became effective on August 1,

Agreement, dated as of August 1, 2008, which created the New Century Liquidating Trust (the

"Trust") and appointed Alan M. Jacobs as Liquidating Trustee of New Century Liquidating Trust

and Plan Administrator of New Century Warehouse Corporation (the "Liquidating Trustee").

The Order confirming the Modified Plan provided that the Liquidating Trustee was

deemed the representative of the Debtors' estates and that the Liquidating Trustee "shall have all

powers, authority, and responsibilities specified in the Modified Plan and the Liquidating Trust

Agreement, including, without limitation, the powers of a trustee under sections 704, 108 and

1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules (including without

limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and

asserting claims, defenses, offsets and privileges) . . . ."   (Main Case D.I. 9957, ¶23). The

Liquidating Trustee has made three distributions to creditors. (*See* Main Case D.I. 11271 at 3).


**Standard for Consideration of a Challenge to Jurisdiction**

JPM and CHF move to dismiss the Complaint for lack of subject matter jurisdiction

pursuant to Fed. R. Civ. P 12(b)(1), made applicable to this proceeding pursuant to

Fed.R.Bankr.P. 7012.[4]  Because jurisdiction is a threshold issue, I will examine this issue first.

---

2008. An appeal was taken and, on July 16, 2009, the United States District Court for the District of
Delaware issued a Memorandum Opinion reversing the Confirmation Order.  On July 27, 2009, the
Bankruptcy Court entered the Order Granting Motion of the Trustee for an Order Preserving the Status
Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole
Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's
Memorandum Opinion (the "Status Quo Order") (Main Case D.I. 9750). On September 30, 2009, the
New Century Liquidating Trust filed the Modified Plan.

[4]In addition to a motion by a party pursuant to Fed. R. Civ. P. 12(b)(1), a court may also dismiss
an action at any time *sua sponte* under Fed.R.Civ.P. 12(h)(3), made applicable hereto by Fed.R.Bankr.P.
7012, if it determines that it lacks subject matter jurisdiction.

The Third Circuit Court of Appeals has explained that:

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings.

*Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citations omitted) *holding*

*modified on other grounds by Simon v. United States*, 341 F.3d 193, 204 (3d Cir. 2003).

The Motion to Dismiss appears to assert a factual challenge to jurisdiction because JPM

and CHF ask this Court to take judicial notice of various state court filings in considering the

jurisdictional challenge. In her opposition to the Motion to Dismiss, Ms. Carr objects to the

request for judicial notice, arguing that while the Court may take judicial notice that documents

were filed in state court, it may not take judicial notice of the contents of or averments within

those documents. Ms. Carr's response raises her repeated challenge to the authenticity or

effectiveness of various state court filings and the state court foreclosure action that followed.

The disputes over the state court issues, however, need not be resolved to determine the

jurisdictional issues surrounding this adversary proceeding. Rather than consider the additional

documents offered by JPM and CHF, I will treat the Motion to Dismiss as a facial challenge to

this Court's jurisdiction by reviewing the allegations in the Complaint in the light most favorable

to the Plaintiff.

### Plaintiff's Factual Allegations and Claims

Ms. Carr's Complaint is rather confusing and sets forth very few factual allegations amid

a number of claims and legal conclusions. This Court must construe liberally a *pro se* litigant's

pleadings. *Higgs v. Atty. Gen. of the U. S.,* 655 F.3d 333, 339 (3d Cir. 2011) citing *Estelle v.*

*Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and *Haines v. Kerner*, 404 U.S.

519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  The factual allegations that can be gleaned

from a liberal construction of the Complaint are as follows:

- JPM and CHF became creditors of the Debtors in 2007;

- The Debtors filed bankruptcy petitions on April 2, 2007;

- Ms. Carr was a borrower of debtor Home123 Corporation ("Home123") and was not provided with notice of the Debtors' bankruptcy filing;[5]

- The Debtors had possession of the Carr Loan on the date of the bankruptcy filing;

- After the bankruptcy filing, the Carr Loan was transferred to the Defendants;[6] and

- The Defendants fabricated and falsified documents, which they filed at the Alameda County Recorder's Office.

The Complaint does not set forth separate claims, but based upon the alleged facts and

asserted legal conclusions, the Court interprets the Complaint as setting forth the following

---

[5]The loan from Home123 to Ms. Carr is not identified in the Complaint.  However, filings in an adversary proceeding filed by Ms. Carr against the Debtors on October 5, 2009 (Adv. No. 09-52251) (the "First Adversary Proceeding") indicate (without dispute) that the loan transaction involved a promissory note signed by Ms. Carr in favor of Home123, which was secured by a deed of trust against Ms. Carr's real property located in Dublin, California (the "Carr Loan"). *See Carr v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.),* No. 09-52251, 2011 WL 1792544, *1 n.3 (Bankr.D.Del. May 10, 2011).  Copies of an Adjustable Rate Balloon Note and a Deed of Trust, both dated January 25, 2006, from Anita Carr to Home123 were attached to the Memorandum of Law in Support of the Motion to Dismiss, but Ms. Carr disputes the "validity and veracity" of those exhibits.  (Carr's Opp., Adv. D.I. 22, at 11).

[6]The Liquidating Trustee filed a Statement of the New Century Liquidating Trust Regarding Verified Complaint of Anita B. Carr (Adv. D.I. 8) (the "Trustee's Statement") in which the Liquidating Trustee asserts that the Carr Loan was sold to JP Morgan Mortgage Acquisition Corp on May 1, 2006, and servicing of the Carr Loan was released to CHF on the same date.  JPM and CHF rely upon this and argue that the Debtors transferred the Carr Loan pre-petition.
Because I am considering this as a facial challenge to jurisdiction, I am considering the allegations in the Complaint in the light most favorable to the Plaintiff; so, for this purpose only, I will assume - - without deciding - - that the Debtors' transfer of the Carr Loan occurred post-petition.

claims against the Defendants:

- Violation of the automatic stay of 11 U.S.C. §362 based upon the transfer of the Carr Loan out of the bankruptcy estate (the "Stay Violation Claim");

- Violation of Bankruptcy Code §101(31), §101(54), §547 and §548 based upon the transfer of the Carr Loan and "Plaintiff's property" (the "Avoidance Claim");[7]

- Fraud, bad faith and abuse of the judicial process based upon the filing of documents with the Alameda County Recorder's Office (the "Fraud Claim"); and

- Violation of the California Homeowner Bill of Rights (Calif. Assem. Bill No. 278, Sen. Bill No. 900 (2011-2012 Reg. Sess.)) (the "California Claim").

Based on these claims, Ms. Carr seeks damages of $2,346,000.00 and a preliminary and

permanent injunction enjoining all Defendants from selling or conveying her Property or from

evicting Ms. Carr from the Property.

## Discussion

(1)    Ms. Carr does not have standing to assert the Stay Violation Claim or the Avoidance Claim.[8]

Upon review of the factual allegations and claims in the Complaint, the first issue that

arises is whether Ms. Carr has standing to pursue the claims.  To appear and be heard in a

bankruptcy case, a party must establish standing under either (i)  Article III of the United States

Constitution (which is required for all litigants in all federal cases), or (ii) Bankruptcy Code

§1109.[9]  *In re Global Indus. Tech., Inc.*, 645 F.3d 201, 210-11 (3d Cir. 2011).  The Third Circuit

---

[7]The Complaint identifies the "Plaintiff's property" or "Carr's property" as her real property located in Dublin, California (the "Property").

[8]"Questions of standing, if they exist, must be considered *sua sponte,* as they are akin to subject matter jurisdiction." *In re Gronczewski*, 444 B.R. 526, 532 n. 4 (Bankr.E.D.Pa. 2011) quoting *In re Total Containment, Inc.*, 2008 WL 682455, *9 n. 11 (Bankr.E.D.Pa. Mar. 5, 2008).

[9]Bankruptcy Code §1109(b) provides:
A party in interest, including the debtor, the trustee, a creditors' committee, an equity

decided that the boundaries for both Article III standing and standing under the Bankruptcy Code

are coextensive.  *Id.* at 211.

"A party seeking constitutional standing must demonstrate an 'injury in fact' that is

'concrete', 'distinct and palpable', and 'actual or imminent.'" *Id.* at 210 citing *Whitmore v.*

*Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).  The Third Circuit further

decided:

> The party must establish that the injury fairly can be traced to the challenged
> action and is likely to be redressed by a favorable decision.  We have noted that
> the contours of the injury-in-fact requirement, while not precisely defined, are
> very generous.  The standard is met as long as the party alleges a specific,
> identifiable trifle of injury or a personal stake in the outcome of the litigation.

*Id.* at 210 (internal quotations and citations omitted).  Similarly, Bankruptcy Code §1109 grants

standing to a "party in interest," which has been described as "anyone who has a legally protected

interest that could be affected by a bankruptcy proceeding." *Matter of James Wilson Associates,*

965 F.2d 160, 169 (7th Cir. 1992).[10]

Ms. Carr claims that the transfer of the Note and Deed of Trust to the Defendants violated

the automatic stay of 11 U.S.C. §362.[11]   The purpose of the automatic stay is to protect the

---

security holders' committee, a creditor, an equity security holder, or any indenture
trustee, may raise and may appear and be heard on any issue in a case under this chapter.
11 U.S.C. §1109(b).

[10]In *Global Indus.*, the Third Circuit adopted the Seventh Circuit's "party in interest" test as set
forth in *James Wilson*.  *Global Indus.*, 645 F.3d at 210-11.

[11]11 U.S.C. §362 provides in pertinent part:
(a)     Except as provided in subsection (b) of this section, a petition . . . operates as a stay,
        applicable to all entities, of  - -
. . . .
        (3)     any act to obtain possession of property of the estate or property from the estate
                or to exercise control over property of the estate;
. . . .

debtor and its creditors.  *Radogna v. Williams Twp. (In re Radogna),* 331 F. App'x 962, 965 (3d

Cir. 2009) quoting *Matter of New Era, Inc.*, 135 F.3d 1206, 1210 (7th Cir. 1998).  Moreover:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy law.  It gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. . . .

*Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.

1982) quoting H.R.Rep.No. 95-595, 95th Cong. 1st Sess. 340 (1977), reprinted in U.S. Cong. &

Admin. News 1978, p. 5787.  At the time she filed this adversary proceeding, Ms. Carr was

neither a debtor nor a creditor of the Debtors and, therefore, she lacks the authority to enforce the

automatic stay either on behalf of the Debtors or herself.[12]  *Radogna,* 331 F. App'x at 965. *See*

---

(h)    [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

[12]Any alleged interest of Ms. Carr as a creditor of the Debtors was resolved by a settlement agreement between the Liquidating Trustee and Ms. Carr, which included a release of her claims against the Debtors and the Liquidating Trust. On August 29, 2009, Ms. Carr filed an unliquidated, unsecured claim against the Debtors and, on October 5, 2009, Ms. Carr filed the First Adversary Proceeding. On or about October 5, 2010, Ms. Carr and the Liquidating Trustee entered into a settlement agreement pursuant to which Ms. Carr was paid a settlement sum of $60,000 in "full and final satisfaction" of the causes of action in the First Adversary Proceeding and any other claims Ms. Carr held against the Debtors and the New Century Liquidating Trust. After the First Adversary Proceeding was dismissed voluntarily, Ms. Carr moved to stay the dismissal, alleging that she had obtained new evidence regarding her claims and that she had been fraudulently induced by the Liquidating Trustee to enter into the settlement. I denied the motion to stay dismissal of the First Adversary Proceeding, concluding that there was no evidence of fraudulent inducement and that Ms. Carr's renewed claims were released in the settlement agreement. *Carr v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.),* No. 09-52251, 2011 WL 1792544 (Bankr.D.Del. May 10, 2011) (the "May 2011 Decision"). I denied Ms. Carr's motion for reconsideration and second motion for reconsideration of the May 2011 Decision.

*also Yanik v. Countrywide Home Loans, Inc.,* 2011 WL 223739 (C.D. Ca. Jan. 21, 2011) ("the

Ninth Circuit has limited standing to assert claims for violation of a stay to individuals Congress

designated as beneficiaries of the stay."). Ms. Carr does not have standing to pursue the Stay

Violation Claim.

Ms. Carr's Avoidance Claim asserts that the Defendants violated Bankruptcy Code

§101(31), §101(54), §547 and §548. Bankruptcy Code sections 101(31) and 101(54) define the

terms "insider" and "transfer" and do not provide a basis for relief. Ms. Carr's Complaint alleges

that the Carr Loan was transferred post-petition and, therefore, the factual allegations do not

support claims against the Defendants based upon Bankruptcy Code §547 or §548, since those

sections authorize a trustee to seek to avoid certain *pre-petition* transfers only. Further, even

assuming that the Carr Loan was transferred pre-petition, the time for pursuing such actions has

passed. 11 U.S.C. §546(a).[13] Further, Ms. Carr is not a trustee and has no standing to pursue

_____

*Carr v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.),* 2011 WL 6097910
(Bankr.D.Del. Dec. 7, 2011) and *Carr v. New Century TRS Holdings, Inc. (In re New Century TRS
Holdings, Inc.),* 2012 WL 38974 (Bankr. D.Del. Jan. 9, 2012). Thereafter, Ms. Carr filed an appeal and
the May 2011 Decision was affirmed by United States District Court for the District of Delaware and the
Third Circuit Court of Appeals. *Carr v. Jacobs (In re New Century TRS Holdings, Inc.),* 2013 WL
1196605 (D.Del. Mar. 25, 2013) *reconsid. denied* 2013 WL 1680472 (D.Del. Apr. 17, 2013) *aff'd* 2013
WL 5944049 (3d Cir. Nov. 7, 2013).

[13]11 U.S.C. §546(a) provides:
(a)  An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be
     commenced after the earlier of - -
     (1)  the later of - -
          (A)  2 years after the entry of the order for relief; or
          (B)  1 year after the appointment or election of the first trustee under section
               702, 1104, 1163, 1202, or 1302 ofthis title if such appointment or such
               election occurs before the expiration of the period specified in
               subparagraph (A); or
     (2)  the time the case is closed or dismissed.

claims under either §547 or §548, and allegations in the Complaint do not support a grant of derivative standing. *Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548 (3d Cir. 2003). *See also In re Yes! Entertainment Corp.*, 316 B.R. 141, 145 (D.Del. 2004) (Generally, derivative standing requires (1) a colorable claim; (2) that the trustee unjustifiably refused to pursue the claim, and (3) permission of the bankruptcy court to initiate the action); *In re Redden*, 2013 WL 5436368, *3 (Bankr.D.Del. Sept. 30, 2013) ("Without an argument that granting standing would benefit the bankruptcy estate, derivative standing is necessarily improper."). Finally, because Ms. Carr is not a creditor of the Debtors or the Liquidating Trust, she has not shown an injury that could be redressed by the avoidance of the Debtors' transfer of the Carr Loan and its return to the bankruptcy estate.

(2)   This Court does not have subject matter jurisdiction to consider the Fraud Claim or the California Claim

Whether this Court can exercise jurisdiction over the remaining Fraud Claim and California Claim depends on an analysis of the statute granting federal district courts and bankruptcy courts subject matter jurisdiction over bankruptcy matters. Federal bankruptcy jurisdiction is established in 28 U.S.C. §1334 which provides that "district courts shall have original and exclusive jurisdiction of all cases under title 11" (28 U.S.C. §1334(a)), and that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" (28 U.S.C. §1334(b)). *In re Combustion Engineering, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004). Further, 28 U.S.C. §157(a) permits district courts to refer most matters to the bankruptcy courts.[14] *Id.* "This broad

---

[14]The District Court for the District of Delaware has entered an order referring matters to the bankruptcy judges in this district. *See* Amended Standing Order of Reference (D.Del. Feb. 29, 2012).

jurisdictional grant allows bankruptcy courts to 'deal efficiently and expeditiously with all

matters connected with the bankruptcy estate.'" *Id.* quoting *Celotex Corp. v. Edwards,* 514 U.S.

300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

Thus, Bankruptcy Court jurisdiction extends potentially to: (i) cases under title 11; (ii)

proceedings arising under title 11; (iii) proceedings arising in a case under title 11; and (iv)

proceedings related to a case under title 11.[15] *Combustion Engineering,* 391 F.3d at 225.   The

---

[15]Cases under title 11, proceedings arising under title 11 and proceedings arising in a case
under title 11 are referred to as "core proceedings." *Combustion Engineering,* 391 F.3d at 225.
Proceedings that are merely related to a case under title 11 are referred to a "non-core
proceedings." *Id.*  Bankruptcy judges are permitted to hear, determine and enter appropriate
orders and judgments on core proceedings.  28 U.S.C. §157(a).  Bankruptcy judges may hear
non-core matters, but "shall submit proposed findings of fact and conclusions of law to the
district court, and any final order or judgment shall be entered by the district judge after
considering the bankruptcy judge's proposed findings and conclusions and after reviewing de
novo those matters to which any party has timely and specifically objected."  28 U.S.C.
§157(c)(1).  However, a bankruptcy judge may enter appropriate orders and judgments on non-
core proceedings with the consent of all parties to the proceedings.  28 U.S.C. §157(c)(2).
    The Supreme Court decision *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594, 180
L.Ed.2d 475 (2011) considered a bankruptcy court's ability to enter a final, binding judgment in a
narrow category of state law actions. *Liquidating Trustee v. Granite Fin. Solutions, Inc. (In re
MPC Computers, LLC)*, 465 B.R. 384,388 (Bankr.D.Del. 2012). The *MPC Computers* Court
explained:

> The narrow question that the *Stern* Court was asked to determine involved a two-part
> inquiry: "(1) whether the bankruptcy Court had the statutory authority under 28
> U.S.C. §157(b) **to issue a final judgment** on [the debtor's] counterclaim; and (2) if
> so, whether conferring that authority on the Bankruptcy Court is constitutional."
> *Stern*, 131 S.Ct. at 2600 (emphasis added). After a lengthy analysis of 28 U.S.C.
> §157 and Article III of the Constitution, the Court held that "although the Bankruptcy
> Court had the statutory authority **to enter judgment on** [the bankrupt estate's state
> law counterclaim], it lacked the constitutional authority to do so." *Id.* at 2601
> (emphasis added). In so holding, the Court in no way disturbed the bankruptcy
> court's jurisdiction to hear certain matters, which is a separate issue from the court's
> power to enter a final judgment."

*MPC Computers,* 465 B.R. at 388. Therefore, the *Stern* decision does not impact the subject
matter jurisdiction question in this matter.

first category, "cases under title 11" refers to the bankruptcy petition itself and is not applicable

here.  *Id.* n. 38. A claim will "arise under" title 11 if "the Bankruptcy Code creates the cause of

action or provides the substantive right invoked." *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir.

2006) quoting *Halper v. Halper*, 164 F.3d 830, 836-37 n.7 (3d Cir. 1999).  The causes of action

asserted in Ms. Carr's Fraud Claim and California Claim are not created by the Bankruptcy Code.

A claim will "arise in" a title 11 case if that claim, by its nature, and not the particular factual

circumstance, could arise only in the context of a bankruptcy case.  *Stoe*, 436 F.3d at 218 citing

*Halper*, 164 F.3d at 836.  Ms. Carr's claims for fraud, bad faith, abuse of process and violations

of the California Homeowner Bill of Rights are not claims that arise only in the context of a

bankruptcy case.  There is no "arising under" or "arising in" jurisdiction to consider the Fraud

Claim or the California Claim.

The remaining question is whether there is "related to" jurisdiction.  Generally, a

proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could

conceivably have any effect on the estate being administered in bankruptcy." *Stoe,* 436 F.3d at

216 quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984).[16]  However, this adversary

proceeding was filed post-confirmation and "related to" jurisdiction narrows post-confirmation.

In *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir.

2004), the Third Circuit decided:

---

[16]While *Pacor* was overruled on other grounds by *Things Remembered, Inc. v. Petrarca*, 516
U.S. 124, 134-35 (1995)(Stevens, J. concurring), the *Pacor* test for "related to" jurisdiction was
discussed favorably by the U.S. Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115
S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995), and in footnote 6 of *Celotex*, the Supreme Court noted that - -
as of that time - - eight other circuit courts had adopted the *Pacor* test with little or no variation. The *Stoe*
Court noted that the *Pacor* "related to" test remains good law in the Third Circuit.  *Stoe*, 436 F.3d at 216
citing *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 381 (3d Cir. 2002).

> [T]he jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan. But where there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate.

*Resorts*, 372 F.3d at 168-69.  In *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.),* 505 F.3d 2237 (3d Cir. 2007), the Third Circuit clarified that the *Resorts* "close nexus" test applies to proceedings that are filed post-confirmation, writing:

> After our present consideration of *Resorts*, we are satisfied that the "close  nexus" test is applicable to "related to" jurisdiction over any claim or cause of action filed post-confirmation, regardless of when the conduct giving rise to the claim or cause of action occurred. We reach this conclusion because in *Resorts*, though we were dealing with post-confirmation rather than pre-confirmation conduct, we focused on the point of time in which the cause of action was instituted: whether it was filed in the "post-confirmation stage," *i.e.*, the "post-confirmation context." Furthermore, we did not indicate that the test should be confined to situations in which the conduct giving rise to the complaint occurred post-confirmation. Moreover, since *Resorts,* we have stated that we use the test to determine whether " 'related to' jurisdiction ... exist[s] at the post-confirmation stage," *Stoe*, 436 F.3d at 216 n. 3 (emphasis added).

*Seven Fields,* 505 F.3d at 264-65.  Because this adversary proceeding was filed three and a half years after confirmation of the Modified Plan, the "close nexus" test applies to determine whether this Court has "related to" jurisdiction over the Fraud Claim or the California Claim. Ms. Carr asserts that the Defendants filed certain fraudulent documents post-petition in the state recorder of deeds office in an attempt to "steal" her real property and, further, that these actions violated the California Homeowner Bill of Rights.  The issues in those claims, including whether the third-party Defendants hold a valid chain of title to the Deed of Trust or whether the third-party Defendants engaged in fraud or bad faith when filing documents and attempting to foreclose upon her real property, do not affect the interpretation, implementation, consummation,

  
execution, or administration of the Debtors' confirmed plan or the Trust Agreement.[17]  Ms. Carr

argues that the Defendants were creditors of the Debtors at the time the petition was filed (and

perhaps even at the time the Defendants performed the conduct complained about), but the

Defendants' status as creditors of the Debtors does not provide any basis for bankruptcy

jurisdiction for disposition of Ms. Carr's claims by this Court.

Ms. Carr is a *pro se* plaintiff.  I understand her position that she has suffered injuries from

the Defendants' alleged conduct, but as I have previously stated - - repeatedly - - this Court is not

the appropriate forum - - indeed, it does not have jurisdictional authority - - to hear and

determine Ms. Carr's claims.  As I explained in the First Adversary:

> To the extent the Plaintiff seeks further relief regarding the validity of
> assignments and the enforceability of the note or deed of trust, she must address
> these claims in an appropriate forum with the participation of the entity or entities
> now claiming an interest in or ownership of the note and deed of trust.  Such
> claims involve the rights and interests of third parties not currently before the
> Court, and the outcome of any dispute between or among those parties will not
> have any effect upon the Debtors' bankruptcy estate. Therefore, the Bankruptcy
> Court currently does not have jurisdiction over such disputes.  *See Pacor, Inc. v.
> Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)[5] ("The usual articulation of the test for
> determining whether a civil proceeding is related to bankruptcy is whether the
> outcome of that proceeding could conceivably have any effect on the estate being
> administered in bankruptcy. . . .  An action is related to bankruptcy if the outcome
> could alter the debtor's rights, liabilities, options, or freedom of action (either
> positively or negatively) and which in any way impacts upon the handling and
> administration of the bankrupt estate.").[6] *See also In re Resorts Int'l, Inc.*, 372
> F.3d 154, 168-69 (3d Cir. 2004) (Post-confirmation, a bankruptcy court's
> jurisdiction is limited to matters in which "there is a close nexus to the bankruptcy
> plan or a proceeding, as when a matter affects the interpretation, implementation,
> consummation, execution, or administration of a confirmed plan or incorporated
> litigation trust agreement).

---

[17]Even if the broader *Pacor* test is applied, this Court does not have "related to" jurisdiction over
this adversary proceeding. The outcome of the Fraud Claim and the California Claim will have no
conceivable effect on the Liquidating Trust.  The outcome of these claims will effect only the rights of
Ms. Carr, who is not a creditor of this estate, and the Defendants.

[n.5 While *Pacor* was overruled on other grounds by *Things Remembered, Inc. v. Petrar*, 516 U.S. 124, 134-35 (1995) (Stevens, J. concurring), the *Pacor* test for "related to" jurisdiction was discussed favorably by the U.S. Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995), and in footnote 6 of *Celotex*, the Supreme Court noted that - - as of that time - - eight other circuit courts had adopted the *Pacor* test with little or no variation.

[n.6 Moreover, if a final judgment has been entered in state court foreclosure proceedings, the *Rooker-Feldman* doctrine prevents this Court from determining that a state court judgment was erroneously entered or taking action to render a state court judgment ineffectual. *See Edwards v. New Century Mortgage Corp. (In re New Century TRS Holdings, Inc.)*, 423 B.R. 467, 472 (Bankr.D.Del. 2010) citing *Madera v. Ameriquest Mortg. Co. (In re Madera)*, 586 F.3d 228, 232 (3d Cir. 2009). ]

*Carr,* 2011 WL 6097910, *3; *Carr*, 2012 WL 38974, *5.

## Conclusion

Ms. Carr does not have standing to assert the Stay Violation Claim or the Avoidance Claim. Furthermore, this Court is without jurisdiction to consider the Fraud Claim and the California Claim. Because this Court has no jurisdiction to consider the claims, it cannot grant the relief sought by Ms. Carr. This adversary proceeding will be dismissed. An appropriate order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: February 3, 2014